IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL FAULKNER,

    Plaintiff,

    v.

Civil Action 2:20-cv-5136
Chief Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

### REPORT AND RECOMMENDATION

Plaintiff, Michael Faulkner, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 14). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

### I.    BACKGROUND

Plaintiff previously sought disability benefits, with an application date of March 4, 2013, and an alleged onset date of January 1, 2006. Plaintiff's March 2013 application was denied initially and upon reconsideration and by an administrative law judge following a hearing in a decision dated October 15, 2015.

Plaintiff protectively filed the at-issue application for benefits on July 17, 2017, alleging that he became disabled on October 10, 2015. (R. 254–66.) Plaintiff's application was denied initially in September 2017, and upon reconsideration in November 2017. (R. 100–163.) A video hearing was held on June 27, 2019, before Administrative Law Judge Karen Kostol (the "ALJ"), who issued an only partially favorable determination on August 19, 2019. (R. 12–37.) The Appeals Council declined to review that determination, rendering it final. (R. 1–6.)

Plaintiff seeks judicial review of the ALJ's determination to the extent that it denied his application for benefits. He brings two contentions of error. First, Plaintiff asserts that the ALJ erred in finding that his spine impairment does not meet the criteria for Listing 1.04A under 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s Statement of Errors 5, ECF No. 17.) Second, Plaintiff asserts that the ALJ's residual functional capacity assessment ("RFC")[1] is not supported by substantial evidence because he cannot perform "light work." (*Id.* at 11.) The undersigned concludes that Plaintiff's contentions of error both lack merit.

## II. THE ALJ'S DECISION

The ALJ issued her decision on August 19, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act as to his application for a period of disability and disability insurance benefits, and that he did not become disabled until June 27, 2019, as to his application for supplemental security income benefits. (R. 12–37.) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017. (R. 19.) At

---

[1] The RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

step one of the sequential evaluation process,[2] the ALJ found that since Plaintiff's alleged disability onset date of October 10, 2015, he had not engaged in substantial gainful activity. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease; emphysema; nicotine dependence; seizure disorder; mild to moderate neurological upper extremity findings on EMG; chronic pain in hips, cervical, lumbar, and thoracic spine; degenerative disc disease of the lumbar spine, cervical spine, and thoracic spine; major depressive disorder; bipolar disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and a history of alcohol and cannabis abuse. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing"). (*Id.*) The ALJ considered the following five Listings:

---

[2] The Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

1.02, 1.04, 3.02, 11.02, and 11.14. (R. 20.) These sections address disorders of the musculoskeletal system, including the spine, as well as the respiratory system and the neurological system.

> The ALJ then set forth Plaintiff's residual functional capacity ("RFC") as follows:
>
> Since October 16, 2015, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e. is able to occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk, with normal breaks, for a total of about 6 hours in an 8-hour workday; and sit, with normal breaks, for a total of about 6 hours in an 8-hour workday; with an unlimited ability to push and/or pull), except the claimant can never climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, and crouch; can kneel or crawl on a minimal basis ( < 10%); must avoid all exposure to extreme cold, extreme heat, wetness or humidity, and hazards, such as dangerous moving machinery and unprotected heights; must avoid moderate or occasional exposure to irritants, such as fumes, odors, dust, and gases; is capable of frequent fingering and handling with the bilateral upper extremities and no overhead reaching with bilateral upper [extremities]; must be afforded the opportunity for brief 3-4 minute changes of position at intervals not to exceed 1 hour without being off task; is limited to a job that accommodates the use of a cane or other assistive device for ambulation or balance; is capable of simple, routine, and repetitive tasks, in a low stress job, defined as having only occasional decision making required, occasional changes in the work setting, and no strict production quotas; capable of no interaction with general public and occasional interaction with co-workers or supervisors, such that the claimant is capable of working with things rather than people.

(R. 22–23.)

At step four of the sequential process, the ALJ explained how she reached her RFC determination, and she incorporated by reference the determination of a prior ALJ to find that Plaintiff was unable to perform his past relevant work as a security officer. (R. 29; *see also* R. 24.) At step five, the ALJ relied on testimony from a vocational expert to determine that, prior to June 27, 2019, in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could have performed, including as an office helper, a mail clerk, or an electrical accessories assembler. (R. 30–31.) The ALJ therefore

4

concluded that Plaintiff was not disabled prior to June 27, 2019. However, as part of her analysis, and based on Plaintiff's change in advanced age status, the ALJ found that Plaintiff did become disabled on that date with respect to his application for supplemental security income benefits. (R. 29–31.) Therefore, as a result of the ALJ's decision, Plaintiff became entitled to some benefits beginning on June 27, 2019, but was denied his applied-for benefits prior to that date. Plaintiff appealed the ALJ's unfavorable ruling.

### III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

5

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.  ANALYSIS

As set forth above, Plaintiff first challenges the ALJ's step-three determination that Plaintiff's spine impairments do not meet Listing 1.04A. (Pl.'s Statement of Errors 5, ECF No. 17.) Plaintiff alternatively asserts that reversal is required because substantial evidence does not support the ALJ's RFC determination that Plaintiff can perform "light work." (*Id.* at 11). The undersigned addresses these contentions of error in turn.

**A.  Listing 1.04A**

In determining whether a claimant is disabled, an ALJ must consider whether the claimant's impairments meet Social Security Listing requirements. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."). The claimant shoulders the burden of producing medical evidence that establishes that all of the elements are satisfied. It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Here, Plaintiff challenges the ALJ's determination that he did not satisfy Listing 1.04A. To satisfy the at-issue listing, Plaintiff must have an impairment as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness [sic]) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04. Additionally, the evidence must show that Plaintiff's impairment "has lasted or can be expected to last for a continuous period of 12 months." 20 C.F.R. § 404.1525(c)(4). Plaintiff has the burden of proving that he meets or equals all the criteria in the Listing. *Malone v. Comm'r of Soc. Sec.,* 507 F. App'x 470, 472 (6th Cir. 2012); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (burden of proving disability remains with the claimant at Steps 1 through 4 and does not shift to the ALJ until Step 5). Thus, Plaintiff has the burden of establishing all of the following criteria:

(1) A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),

(2) resulting compromise of a nerve root (including the cauda equina) or the spinal cord,

(3) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

(4) limitation of motion of the spine,

(5) motor loss (atrophy with associated muscle weakness or muscle weakness [sic]) accompanied by sensory or reflex loss,

(6) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and

(7) the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

In determining whether a claimant satisfies the requirements of a Listing, the ALJ must "actually evaluate the evidence, compare it to Section [1.04] of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011). Even where an ALJ's reasoning at step three is minimal, however, remand is not required where the ALJ makes factual findings elsewhere in the opinion to support the step-three determination. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014) (rejecting argument that ALJ erred by not making specific findings at step three where "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three") (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time")); *Rainey-Stiggers v. Comm'r of Soc. Sec.*, No. 1:13-cv-517, 2015 WL 430193, at *6 (S.D. Ohio Feb. 2, 2015) ("[A]lthough the ALJ's Listing 1.02 discussion is brief, the ALJ made sufficient factual findings elsewhere in her decision to . . . enable the Court to meaningfully review her decision.").

Here, the ALJ's step-three determination, together with her discussion of Plaintiff's treatment records and reliance upon the medical opinions, enable the Court to meaningfully review her determination that Plaintiff did not satisfy Listing 1.04A. The ALJ offered the following discussion relating to Listing 1.04A:

> In regards to listing 1.04 (disorders of the spine), there is no evidence of nerve root compression, which results in motor loss (atrophy with associated muscle weakness) and sensory or reflex loss. There is no evidence of spinal arachnoiditis or lumbar spinal stenosis that results in the inability to ambulate effectively during the period at issue.

(R. 20.) In addition to articulating which aspect of Listing 1.04A Plaintiff failed to satisfy, elsewhere in her decision, the ALJ offered a lengthy discussion of Plaintiff's medical records relating to his spine impairment, including records that supported her determination that the evidence did not support a finding "of nerve root compression, which results in motor loss (atrophy with associated muscle weakness) and sensory or reflex loss." (*See, e.g.,* R. at 20, 23–28 (citing treatment records reflecting 5/5 strength in Plaintiff's extremities and noting that Plaintiff engages in activities such as moving firewood and moving a picnic table).) Finally, the ALJ found the opinions of state-agency reviewing physicians Drs. Roseberry and Bertani—both of whom concluded Plaintiff did not meet or equal Listing 1.04 (R. 141–44, 109–15)— "partially persuasive." (R. 28.) The ALJ explained that their opinions relating to Plaintiff's musculoskeletal and respiratory conditions were "consistent with the evidence," but that new evidence relating to Plaintiff's "cervical abnormalities" necessitated "more restrictive reaching and manipulative limitations." (*Id.*); *see also Jones v. Comm'r of Soc. Sec.*, No. 5:10-cv-2621, 2012 WL 946997, at *8 (N.D. Ohio Mar. 20, 2012) ("[A]n ALJ is permitted, even encouraged, to rely on a medical expert for a professional medical analysis of whether, on a complicated record, a claimant meets or equals a listing."). Because the foregoing record evidence upon which the ALJ relied amply supplies substantial evidence in support of her step-three determination that Plaintiff does not satisfy Listing 1.04A, the undersigned recommends that Plaintiff's first contention of error be overruled.

      Moreover, even if the ALJ had failed to sufficiently articulate the bases for her step-three determination, such error is harmless where, as here, Plaintiff has failed to produce sufficient evidence to demonstrate that he meets the Listing criteria. *See Forrest*, 591 F. App'x at 366 ("And even if these reasons failed to support the ALJ's step-three findings, the error is harmless,

because [the claimant] has not shown that his impairments met or medically equaled in severity any listed impairment . . . ."). Although Plaintiff refers to evidence suggesting that *some* of the Listing 1.04(A) criteria are satisfied for *some* period of time, he fails to identify evidence showing that *all* the Listing criteria were met for at least the required twelve-month period. *See Sistrunk v. Comm'r of Soc. Sec.*, No. 1:17-cv-1771, 2018 WL 3126582, at *12 (N.D. Ohio June 26, 2018) (collecting cases establishing that "only occasional or intermittent findings of the Listing 1.04 requirements are insufficient") (internal quotation marks omitted) (citations omitted); *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 642 (6th Cir. 2013) ("A substantial question about whether a claimant meets a listing requires more than . . . a mere toehold in the record on an essential element of the listing."). For example, as the Commissioner points out, Plaintiff has failed to point to specific evidence that Plaintiff suffered the requisite atrophy with associated muscle weakness. (*See* Comm'r Mem. in Opp'n 5–6, ECF No. 19.) Nor do Plaintiff's records show a positive straight-leg raising test in *both* the supine and sitting position as required by Listing 1.04(A)'s criterion 6. *See Gang v. Comm'r of Soc. Sec.,* No. 2:20-cv-3267, 2021 WL 2800709 at *11 (S.D. Ohio July 6, 2021) (failure to demonstrate both types of positive leg-raising test alone will prohibit a Listing 1.04(A) finding); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) ("[T]he claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing.") (citations omitted). For this alternative reason, it is recommended that Plaintiff's first contention of error be overruled.

**B.     RFC Determination**

Plaintiff alternatively contends that reversal is required because substantial evidence does not support the ALJ's determination that he can perform "light work." (Pl.'s Statement of Errors

11, ECF No. 17.) More specifically, Plaintiff asserts that he can neither perform the standing and walking required at the light work level of exertion nor perform the grasping, handling, lifting, and carrying required. (*Id*. at 12.)

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If,

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

11

however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Substantial evidence supports the ALJ's determination that Plaintiff could perform a restricted range of light work. The ALJ sufficiently explained how the record evidence supported the RFC she assessed. The ALJ offered a lengthy discussion of the record evidence, which included consideration of Plaintiff's treatment records, objective testing and examination results, the effectiveness of treatment and medication, Plaintiff's testimony, Plaintiff's activities of daily living, and the opinion evidence. The ALJ found the opinions of Dr. Shannon and the state-agency reviewing physicians to be partially credible, ultimately assigning an RFC that was *more restrictive* than that opined by the reviewing physicians and explaining her bases for the additional limitations she included in Plaintiff's RFC.

Significantly, Plaintiff does not maintain that the ALJ ignored or misinterpreted critical evidence or that she erred in relying upon the opinion evidence in formulating Plaintiff's RFC. Nor does he identify a particular limitation the ALJ erroneously excluded. Instead, Plaintiff cites record evidence that he contends *could* support a more restrictive RFC. But where the record could support two different conclusions, "the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17-cv-1078, 2018 WL 2422035 at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, No. 1:17-cv-1078, 2018 WL 2416232 (N.D. Ohio May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there

12

is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)); *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'") (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

Because substantial evidence supports the ALJ's RFC determination, the undersigned recommends that Plaintiff's second contention of error be overruled.

## V. RECOMMENDED DISPOSITION

Based on a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision. Therefore, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE